RECEIVED

MAY 14 2026

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**OXFORD DIVISION**

| | |
|---|---|
| **CARL JOSEPH FULMER,** *Plaintiff,* v. **EZ AUTO, INC.,** a Tennessee corporation; **CREDIT ACCEPTANCE CORPORATION,** a Michigan corporation; and **FIRST AUTOMOTIVE SERVICE CORPORATION d/b/a iA AMERICAN WARRANTY GROUP,** a New Mexico corporation, *Defendants.* | Civil Action No.: _____ **COMPLAINT FOR DAMAGES, RESCISSION, AND OTHER RELIEF** **JURY TRIAL DEMANDED** 3:26-CV-121-JDM-RP |

Plaintiff Carl Joseph Fulmer ("Plaintiff"), proceeding pro se, brings this action against Defendants EZ Auto, Inc. ("EZ Auto"), Credit Acceptance Corporation ("CAC"), and First Automotive Service Corporation d/b/a iA American Warranty Group ("FASC") (collectively "Defendants"), and alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq.; the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.; and the FTC Holder Rule, 16 C.F.R. § 433.

2. This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff (a Mississippi resident) and each Defendant (Tennessee, Michigan, and New Mexico corporations), and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Oxford Division of the Northern District of Mississippi under 28 U.S.C. § 1391(b) because Plaintiff resides in DeSoto County, Mississippi, within this judicial

district, and a substantial part of the ongoing harm—including title fraud preventing Plaintiff from legally operating the vehicle in Mississippi—is occurring here. Furthermore, the Vehicle Service Contract contains a Mississippi State Addendum explicitly stating the arbitration section is deleted in its entirety, giving Defendants no basis to compel arbitration.

## II. PARTIES

5. **Plaintiff:** Carl Joseph Fulmer is a citizen of DeSoto County, Mississippi. Mailing address: P.O. Box 18, Hernando, MS 38632. Phone: (205) 356-0048. Email: joefulmer@proton.me.

6. **Defendant EZ Auto, Inc.:** A Tennessee corporation doing business at 4909 Elmore Road, Memphis, Shelby County, Tennessee 38128. EZ Auto acted through its agents, Salesman Sal Samana and Agent/Manager Chris Morrow. Phone: (901) 387-1111. Email: chrismarrowez@yahoo.com.

7. **Defendant Credit Acceptance Corporation ("CAC"):** A Michigan corporation with its principal place of business at 25505 West Twelve Mile Road, Southfield, MI 48034. CAC is a "creditor" under TILA and the assignee and holder of Account No. 124869017. CAC is the subject of an active enforcement action by the New York Attorney General alleging identical predatory practices to those described herein.

8. **Defendant First Automotive Service Corporation d/b/a iA American Warranty Group ("FASC"):** A New Mexico corporation with a mailing address at P.O. Box 30250, Albuquerque, NM 87190. FASC is the administrator and obligor under Vehicle Service Contract No. SUPP-10004190549.

## III. STATEMENT OF FACTS

### A. Background — Prior Visits and Lender Evasion

9. Prior to the March 21, 2026 purchase, Plaintiff had visited EZ Auto on at least one prior occasion. During the earlier visit and phone calls, Salesman Sal Samana quoted Plaintiff varying down payment amounts on different vehicles and refused, on multiple occasions, to disclose the identity of the lender who would be financing the purchase. Plaintiff found this evasion troubling.

10. On the prior visit, the vehicle Plaintiff had been considering—a Jeep—was no longer available. Samana assured Plaintiff that if the right vehicle could be found, financing would be approved. Samana attempted to place Plaintiff into a Honda Pilot he personally owned, but that vehicle had mechanical hesitation and was priced approximately $4,000 higher than Plaintiff's range.

11. Plaintiff was drawn to a 2015 Subaru Forester—white, heavily tinted rear windows, hanging price tag of $7,995—displayed on the lot. Plaintiff performed a personal inspection before agreeing to purchase: he looked beneath the vehicle, checked beneath the hood, examined the radiator, and checked the dipstick. The oil on the dipstick appeared unusually

clear—so clear that Plaintiff had to look at it multiple times because it was so hard to see and the sticker showed over a 1000 miles driven. Despite that anomaly, Plaintiff saw a full radiator but no visible coolant in the reservoir, no obvious leaks, and the vehicle drove acceptably on a test drive. Plaintiff agreed to proceed.

## B. The Fraudulent Transaction — Document Concealment and Illegal Tied Selling

12. On March 21, 2026, Plaintiff purchased the 2015 Subaru Forester, VIN JF2SJARC9FH445163, odometer reading 162,533 miles, from EZ Auto, Inc. at 4909 Elmore Road, Memphis, Tennessee. Plaintiff provided a $2,500.00 cash down payment.

13. The vehicle's hanging price tag displayed $7,995.00. The Retail Installment Contract, however, listed a cash price of $8,490.00—a $495.00 increase that was never disclosed or explained to Plaintiff till the final contract when it was more. Plaintiff was told that it was the finance charge.

14. All contract documents were presented to Plaintiff fully pre-typed and pre-populated, including pre-checked election boxes for optional, high-cost add-on products. Plaintiff did not select, check, or pre-fill any box or field. Every data entry and every election had already been made before any document was placed in front of Plaintiff.

15. During the signing process, Salesman Sal Samana employed a deliberate concealment tactic: he stacked the documents and slid them toward Plaintiff one at a time, covering the contents with the prior docs, claiming he was "helping Plaintiff find the places to sign." Samana directed Plaintiff to sign or initial each document without allowing time or opportunity to read the contents.

16. Plaintiff grew uncomfortable within the first few documents. He slid cover documents back and began reading and asking questions. Samana responded to each question by characterizing the item as "standard financing" and resuming the slide-and-sign rhythm.

17. When Plaintiff noticed the Vehicle Service Contract and its price of $2,674.00 and said "whoa, wait a minute," Samana made the following explicit false representation: "The lender requires it. We don't do warranties here—they want you to pay your payment and if you don't have it that means trouble, you'd have to pay for repairs yourself and still make your payment too." Samana further stated, in words to the effect that at this car's age and mileage, no lender would finance it without a warranty to protect their investment.

18. Plaintiff believed this representation. Given Plaintiff's constrained credit position and the fact that Samana had refused throughout to identify the lender—denying Plaintiff any ability to independently verify the claim—Plaintiff had no practical ability to challenge or verify the representation at the time of signing. Plaintiff would not have signed for the VSC had he known it was voluntary.

19. Samana made the same false representation regarding GAP protection ($862.00): that the lender required it as a condition of financing given the age and high mileage of the vehicle.

Although Plaintiff noticed the word "optional" on the GAP document, Samana verbally overrode that language, assuring Plaintiff that the optional language was a standard form disclaimer that did not apply in his situation—that he "had to have it, period." Plaintiff trusted this representation and signed.

20. A Roadside Assistance charge of $84.00 was also pre-checked and pre-filled on the contract face page, added without any separate disclosure or explanation.

21. These fraudulent add-ons inflated the amount financed from a legitimate approximately $5,495.00 to $11,535.21, at 27.99% APR over 54 months, with monthly payments of $378.24—yielding total repayment of $20,424.96 on a vehicle tagged at $7,995.00.

22. The documents signed by EZ Auto agent Chris Morrow on March 21, 2026, including the VSC Acknowledgement (Exhibit 2), the GAP Acceptance (Exhibit 3), and the VSC Contract itself (Exhibit 4), each explicitly state in plain language that these products were VOLUNTARY and NOT REQUIRED. Morrow's signature on all three documents establishes that EZ Auto had actual knowledge that Samana's representations were false at the moment he made them.

23. The electronic documents returned to Plaintiff bear the notation "Copy of Electronic Original." The signature fields for both Plaintiff and EZ Auto agent Chris Morrow contain identical auto-generated cursive font signatures produced by the same electronic signing system, with election boxes for optional products pre-checked. Plaintiff was not given an opportunity to review the electronic documents prior to the signature application, nor to draw or type his own signature. The pre-checked election boxes on the electronic documents further confirm that product selections were made before Plaintiff was presented with any paperwork. (Physically signed documents were presented first then Plaintiff was required to sit at Morrow's computer and Samana chose file, etc. Plaintiff asked about personal signature was same font with no response.

24. The Retail Installment Contract (Exhibit 1) contains the FTC Holder Notice, which states: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER." This provision makes Credit Acceptance Corporation jointly and directly liable for all claims against EZ Auto arising from this transaction.

## C. Vehicle Defects and Dealer Knowledge of Pre-Existing Condition

25. Carfax records confirm that on February 12, 2026—only 37 days before EZ Auto sold the vehicle to Plaintiff—the vehicle underwent a professional Pre-Delivery Inspection at Dobbs Brothers Chevrolet of Bartlett, Tennessee (Exhibit 16).

26. On May 11, 2026, Plaintiff visited Dobbs Brothers Chevrolet and spoke directly with service representative Matt Richardson. Plaintiff recorded this conversation with his personal mobile device. The recording was made in Tennessee, which permits one-party consent

recordings pursuant to Tenn. Code Ann. § 39-13-601. A true and accurate transcript is attached as Exhibit 24, and an Authentication Affidavit is attached as Exhibit 22. The physical audio recording will be available on a USB storage medium and will be submitted to the Court upon request or as directed.

27. During that recorded conversation, Richardson confirmed that following the February 12, 2026 inspection, Dobbs Brothers did not perform a standard oil change on the vehicle. Richardson explicitly stated that the dealership determined the vehicle was fit only for wholesale because the necessary repairs were "more than what they wanted to put into it." The vehicle was therefore wholesaled and "went somewhere else"—ultimately to EZ Auto, which sold it to Plaintiff 37 days later without disclosing the inspection findings.

28. Despite Dobbs Brothers declining to repair or service the vehicle, a Valvoline oil change sticker affixed to the vehicle's windshield shows the oil was last changed on September 8, 2025 at approximately 160,950 miles — with a next-service mileage of 163,950. The vehicle's odometer at sale on March 21, 2026 read 162,533 miles, meaning the oil was overdue by approximately six months at the time of sale with no Carfax record of any intervening oil change. Dobbs Brothers service representative Matt Richardson confirmed on recorded audio (Exhibit 21) that Dobbs did not perform an oil change before wholesaling the vehicle. Upon information and belief, EZ Auto changed the oil between the February 12, 2026 Dobbs PDI and the March 21, 2026 sale — without recording the service in Carfax and without placing a new sticker — to temporarily mask oil-coolant contamination that would have been visible on the overdue dipstick, while leaving the old sticker in place to conceal the recency of the change. A photograph of the sticker is attached as Exhibit 25.

29. At the time of purchase, Plaintiff checked the dipstick and found the oil crystal clear — so clear that Plaintiff had to look at it multiple times because it was so hard to see, and the sticker showed over 1,000 miles driven since the last change. That unusual clarity on a six-month-old, overdue oil change is consistent with a recent undisclosed oil change performed to mask contamination. The contamination returned within 27 days because the underlying head gasket failure was never repaired — only temporarily concealed.

30. On April 17, 2026—just 27 days after purchase—the vehicle suffered catastrophic mechanical failure. The low oil warning light illuminated. Plaintiff checked the dipstick and saw that the crystal-clear oil was now low and had to add approximately ½ quart and was almost runny. Plaintiff did not see oil anywhere but smelled a burning odor. He then checked the radiator and discovered oily globs in the coolant as he went to top it off. An oily substance in the oil on a Subaru upon research can be one of four options, one being—a diagnostic indicator of head gasket failure that develops over time and cannot arise spontaneously within 27 days of a purchase. Plaintiff drove the vehicle to Jim Keras Subaru.

31. Jim Keras Subaru issued a repair estimate of $7,997.60 (Exhibit 11), documenting a blown head gasket requiring full engine reseal and a transmission valve body failure. Plaintiff

paid $110.07 in diagnostic fees (Exhibit 17). Mileage at drop-off was approximately 164,302—confirming the vehicle had traveled roughly 1,769 miles since purchase before catastrophic failure.

32. The presence of milky coolant (oil-coolant intermixing) is a condition that develops gradually over weeks or months, not acutely over 27 days of normal driving. The combination of: (a) Dobbs Brothers' pre-sale inspection finding repairs "more than what they wanted to put into" the vehicle; (b) an undocumented oil change with no Carfax record performed between the Dobbs inspection and the EZ Auto sale; (c) Plaintiff's observation of unusually clear oil at time of purchase; and (d) catastrophic head gasket failure within 27 days, establishes that the defect existed at the time of sale and that EZ Auto had actual or constructive knowledge of it.

## D. Bad Faith Warranty Denial

33. Plaintiff timely filed a warranty claim with FASC on April 17, 2026. Head gaskets are a listed covered component under the VSC.

34. FASC Claims Supervisor Mike Kraut confirmed via email (Exhibit 10) that if a covered breakdown is confirmed, teardown costs are covered. Nevertheless, FASC demanded that Plaintiff first pay $2,200.00 in engine teardown labor as a precondition to any coverage evaluation—a bad-faith practice designed to deter valid claims by shifting the financial risk entirely to the consumer.

35. By letter dated May 4, 2026 (Exhibit 18), FASC stated the engine-related claim "has not been denied and remains open" but continued to condition evaluation on completion of the paid teardown. This constitutes bad-faith delay and unfair claims handling.

36. The transmission valve body claim was denied outright by FASC as a non-covered component, despite the issue being relevant to the engine failure and diagnostic tests they wanted.

## E. Statutory Title and Registration Violations

37. EZ Auto collected a $795.00 documentation fee from Plaintiff to handle title and registration of the vehicle in Mississippi.

38. Instead of filing for a Mississippi motor vehicle title, EZ Auto submitted or caused the submission of a Mississippi Department of Wildlife, Fisheries and Parks Boat Registration Application (Exhibit 15) for the 2015 Subaru Forester—a land vehicle. Plaintiff signed this document but did not notice it was a boat registration form. The document requires notarization, but no notary was present. When Plaintiff raised this concern, Samana dismissed it by stating "Our title lady will handle that."

39. As a result, no valid Mississippi motor vehicle title exists for the vehicle Plaintiff purchased. Plaintiff has been unable to legally register, sell, transfer, or fully exercise

ownership rights over the vehicle. The Tennessee temporary tag (Exhibit 7) expires May 20, 2026.

40. EZ Auto's Tennessee Temporary Vehicle Registration (Exhibit 7) lists EZ Auto's dealer phone number—(901) 387-1111—in the owner information field, suggesting EZ Auto retained control over the registration, and has failed to come forth with any updates or phone calls regarding the title as promised, further depriving Plaintiff of clear title and setting him up for citations, fees, and further harm.

## IV. CAUSES OF ACTION

## COUNT I — FRAUDULENT MISREPRESENTATION / FRAUD IN THE INDUCEMENT

### (Against EZ Auto, Inc.)

41. Plaintiff realleges all preceding paragraphs. On March 21, 2026, Salesman Sal Samana made the following material false representations of fact to Plaintiff: (a) that the VSC was required by the lender as a mandatory condition of financing; (b) that GAP protection was required by the lender given the vehicle's age and mileage; (c) that the "optional" language in the GAP document did not apply to Plaintiff's situation; and (d) that the $795.00 documentation fee would result in proper Mississippi motor vehicle title and registration.

42. Each representation was false. Samana knew each was false at the moment of making it, as demonstrated by the acknowledgement documents signed by Chris Morrow the same day (Exhibits 2, 3, and 4) confirming both products were voluntary and not required. Plaintiff justifiably relied on Samana's representations. Plaintiff could not verify them because EZ Auto refused throughout to identify the lender. Plaintiff suffered actual damages as a direct result. The fraud was willful, entitling Plaintiff to punitive damages. See Morris v. Mack's Used Cars & Parts, Inc., 824 S.W.2d 538 (Tenn. 1992).

## COUNT II — TRUTH IN LENDING ACT VIOLATIONS, 15 U.S.C. § 1601 et seq.

### (Against EZ Auto and Credit Acceptance Corporation)

43. Plaintiff realleges all preceding paragraphs. TILA and Regulation Z, 12 C.F.R. Part 1026, require creditors to clearly and conspicuously disclose all material terms of consumer credit transactions. Defendants violated TILA by: (a) concealing contract provisions during signing through physical document manipulation; (b) failing to disclose the $495.00 price increase from the tagged price to the contract price; (c) misrepresenting optional add-ons as mandatory to artificially inflate the amount financed; (d) pre-populating election boxes for optional products without informed consumer consent; and (e) using an electronic signing system that did not provide Plaintiff a meaningful opportunity to review the documents. Plaintiff is entitled to actual damages, statutory damages up to $1,000, attorney's fees, and

costs pursuant to 15 U.S.C. § 1640. See Cannon v. Cherry Hill Toyota, Inc., 161 F. Supp. 2d 362 (D.N.J. 2001).

## COUNT III — TENNESSEE CONSUMER PROTECTION ACT, T.C.A. § 47-18-101 et seq.

### (Against EZ Auto, Inc.)

44. Plaintiff realleges all preceding paragraphs. The transaction occurred at EZ Auto's Memphis, Tennessee location, subjecting it to the Tennessee Consumer Protection Act. EZ Auto's conduct—including misrepresenting mandatory nature of optional products, concealing contract terms through physical manipulation, selling a vehicle with known pre-existing defects, filing a boat registration for a motor vehicle, and collecting fees for services not rendered—constitutes unfair and deceptive trade practices under T.C.A. § 47-18-104. These violations were willful and knowing. Plaintiff is entitled to treble damages under T.C.A. § 47-18-109(a)(3), attorney's fees, and costs.

## COUNT IV — MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301 et seq. / BREACH OF CONTRACT

### (Against First Automotive Service Corporation)

45. Plaintiff realleges all preceding paragraphs. The VSC constitutes a written warranty under the Magnuson-Moss Warranty Act. FASC breached the VSC in bad faith by conditioning coverage evaluation for an explicitly covered component—the head gasket—on Plaintiff's advance payment of $2,200.00 in teardown labor, while simultaneously acknowledging that teardown costs are covered if the breakdown is covered. This circular requirement is a bad-faith claims avoidance tactic. Plaintiff fulfilled all conditions precedent, including timely presentment of the claim. Plaintiff is entitled to repair costs, full refund of all VSC premiums paid, consequential damages, and punitive damages. See Boelens v. Redman Homes, Inc., 759 F.2d 504 (5th Cir. 1985).

## COUNT V — BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Against EZ Auto, Inc.)

46. Plaintiff realleges all preceding paragraphs. Under T.C.A. § 47-2-314 and the Magnuson-Moss Warranty Act, a vehicle sold in the ordinary course of business carries an implied warranty that it is fit for the ordinary purpose of transportation. A vehicle suffering catastrophic head gasket failure and transmission failure within 27 days of purchase—from a pre-existing defect the seller knew or should have known about—was not merchantable at the time of sale. The $7,997.60 repair estimate demonstrates the vehicle was unmerchantable. Plaintiff is entitled to the cost of repair, diminution in value, and all consequential damages.

## COUNT VI — STATUTORY TITLE VIOLATIONS / UNJUST ENRICHMENT

*(Against EZ Auto, Inc.)*

47. Plaintiff realleges all preceding paragraphs. EZ Auto collected $795.00 from Plaintiff to procure a valid Mississippi motor vehicle title and registration. EZ Auto failed to perform this service, instead submitting or facilitating the submission of a Mississippi boat registration application for a land vehicle—a document void for this purpose—without a notary and without Plaintiff's informed understanding. EZ Auto has been unjustly enriched in the amount of $795.00 and is liable for restitution plus all consequential damages flowing from the absence of valid title, including Plaintiff's inability to legally operate, register, sell, or transfer the vehicle.

## COUNT VII — FTC HOLDER RULE LIABILITY, 16 C.F.R. § 433.2

*(Against Credit Acceptance Corporation)*

48. Plaintiff realleges all preceding paragraphs. The Retail Installment Contract (Exhibit 1) contains the required FTC Holder Notice making CAC—as assignee and holder of the contract—jointly and directly subject to all claims and defenses Plaintiff asserts against EZ Auto. CAC cannot disclaim liability for EZ Auto's fraudulent conduct. CAC's liability under the Holder Rule is not limited to amounts paid; Plaintiff may assert affirmative recovery against CAC as holder for the full scope of damages flowing from EZ Auto's conduct. See Medical Marijuana, Inc. v. Horn, 145 S. Ct. 931 (2025).

## V. DAMAGES AND RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment in Plaintiff's favor against all Defendants, jointly and severally, on all counts;

2. Order preliminary and permanent injunctive relief prohibiting Credit Acceptance Corporation from initiating repossession, accelerating the loan balance, requiring further monthly payments, or reporting any negative credit information during the pendency of this action;

3. Order full rescission of the Retail Installment Contract (Account #124869017) and all related add-on contracts, with restitution of all payments made by Plaintiff and full deletion of all related credit tradelines;

4. Award actual damages, including but not limited to: $2,500.00 down payment; $378.24 first monthly payment; $110.07 diagnostic fees; $7,997.60 in repair costs; fraudulent add-on charges ($2,674.00 VSC + $862.00 GAP + $84.00 Roadside Assistance); $795.00 documentation fee; excess interest at 27.99% APR; and alternative transportation costs;

5. Award treble damages against EZ Auto for willful and knowing violations of the Tennessee Consumer Protection Act, T.C.A. § 47-18-109(a)(3), in an amount to be determined at trial;

6. Award statutory damages under TILA, 15 U.S.C. § 1640, and punitive damages for common law fraud;

7. Order EZ Auto to immediately resolve Plaintiff's Mississippi motor vehicle title and registration at its own expense;

8. Award attorney's fees and costs where permitted by law if applicable;

9. Grant such other and further relief as the Court deems just and proper.

## VI. JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

## VII. EXHIBIT LIST

**Exhibit 1:** Retail Installment Contract — EZ Auto / Credit Acceptance, Account #124869017, 03/21/2026

**Exhibit 2:** VSC Acknowledgement of Vehicle Service Contract Selection — signed Chris Morrow, 03/21/2026 ("NOT REQUIRED")

**Exhibit 3:** GAP Acceptance of Coverage — signed Chris Morrow, 03/21/2026 ("VOLUNTARY, NOT REQUIRED")

**Exhibit 4:** Superior Protection Plan VSC Contract #SUPP-10004190549 — signed Chris Morrow, 03/21/2026 ("optional" stated on face)

**Exhibit 5:** Wynn's GAP Waiver Addendum #10003520280 — signed Chris Morrow, 03/21/2026

**Exhibit 6:** Mississippi State Addendum to VSC — arbitration clause deleted in its entirety

**Exhibit 7:** Tennessee Temporary Vehicle Registration — EZ Auto dealer phone listed as owner; Marshall County TN (not Mississippi)

**Exhibit 8:** Text message exchange with Sal Samana — April 21–22, 2026 (includes "sorry that happen" admission)

**Exhibit 9:** Email from Plaintiff to Sal Samana — April 23, 2026 (no response received)

**Exhibit 10:** iA American / FASC email — Mike Kraut, April 23, 2026 (confirms teardown covered if breakdown is covered)

**Exhibit 11:** Jim Keras Subaru Repair Estimate R.O. #308747H — $7,997.60, dated April 24, 2026 (NOTE: VIN typo on estimate is Jim Keras clerical error; correct VIN confirmed by all other exhibits)

**Exhibit 12:** Credit Acceptance Welcome Letter — confirms account terms, VSC, GAP, $381.99 payment

**Exhibit 13:** Phone records — call to Chris Morrow April 23, 2026, 9:53 AM (7+ minutes)

**Exhibit 14:** Jim Keras Subaru service advisor text messages — confirms both failures, $2,200 teardown requirement, loaner authorized

**Exhibit 15:** Mississippi Dept. of Wildlife, Fisheries and Parks Boat Registration Application — filed by EZ Auto for this land vehicle

**Exhibit 16:** Carfax Vehicle History Report — Dobbs Brothers Chevrolet PDI February 12, 2026 (37 days pre-sale)

**Exhibit 17:** Jim Keras Subaru Diagnostic Invoice — $110.07

**Exhibit 18:** First Automotive Service Corporation Letter — May 4, 2026 (claim open, teardown required)

**Exhibit 19:** First Payment Confirmation — Credit Acceptance payment made on due date

**Exhibit 20:** Phone records — calls to iA American Warranty (866-410-6748), April 17–23, 2026

**Exhibit 21:** Audio Recording — Plaintiff and Matt Richardson, Dobbs Brothers Chevrolet, May 11, 2026 (available on physical USB medium upon request)

**Exhibit 22:** Authentication Affidavit — Carl Joseph Fulmer, re: Exhibit 21

**Exhibit 23:** Photograph — Matt Richardson's workstation at Dobbs Brothers Chevrolet, May 11, 2026

**Exhibit 24:** Transcript of Exhibit 21 — Audio Recording, Plaintiff and Matt Richardson

**Exhibit 25:** Photograph — Valvoline oil change sticker affixed to vehicle (shows next-change mileage 163,950; no Carfax record of corresponding oil change)

## VERIFICATION

I, Carl Joseph Fulmer, declare under penalty of perjury under the laws of the United States of America that I have read the foregoing Complaint and that the facts stated therein are true and correct to the best of my knowledge, information, and belief. The exhibits referenced herein are true and correct copies of the documents described.

Executed this 14th day of May, 2026, at Oxford, Mississippi.

**Carl Joseph Fulmer, Pro Se Plaintiff**

P.O. Box 18

Hernando, MS 38632

(205) 356-0048 | joefulmer@proton.me