**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**CARL JOSEPH FULMER** **PLAINTIFF**

**V.** **CAUSE NUMBER: 3:26-cv-00121-JDM-RP**

**EZ AUTO, INC., et al.** **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER COMPELLING ARBITRATION

Pro se Plaintiff Carl Fulmer purchased a 2015 Subaru Forester from Defendant EZ Auto, Inc. in Memphis, Tennessee. A Retail Installment Contract covered the entire purchase. EZ Auto assigned the retail contract to Defendant Credit Acceptance Corporation. Shortly after purchase, the Forester started leaking oil into its cooling system. So Fulmer sued EZ Auto and Credit Acceptance.[1]

In his complaint, Fulmer alleges that EZ Auto concealed the Forester's mechanical issues. He also claims that both EZ Auto and Credit Acceptance misrepresented and failed to disclose portions of the retail contract.

Credit Acceptance moved to Compel Arbitration under the retail contract's arbitration provision. [28] EZ Auto responded in support of the motion.[2] [45] And it asserts its own right under the contract to arbitrate Fulmer's dispute.

---

[1] Fulmer also sued First Automotive Service Corporation d/b/a iA American Warranty Group. First Auto did not join in the motion to compel arbitration. So this Order only addresses EZ Auto and Credit Acceptance.

[2] EZ Auto initially moved to dismiss for lack of personal jurisdiction or alternatively for improper venue. Now, it waives personal jurisdiction for the limited purpose of compelling arbitration. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 (5th Cir. 2019) ("When a party agrees to arbitrate, it subjects itself to the court's jurisdiction for 'the limited

The retail contract bears Fulmer's electronic signature and initials. And he physically signed a separate document allowing use of electronic signatures. So Fulmer agreed to the retail contract—including the arbitration provision. Further, the retail contract's arbitration provision delegates the arbitrability of claims to the arbitrator. And since the delegation clause is valid, the arbitrator must decide which, if any, of Fulmer's claims are subject to arbitration. Thus Credit Acceptance's Motion to Compel Arbitration is **GRANTED**. Fulmer must arbitrate his claims against both Credit Acceptance and EZ Auto.

**Facts and Procedural History**

According to his complaint, Fulmer visited EZ Auto and discussed various vehicles with salesman Sal Samana. During these discussions, Fulmer expressed interest in the Forester. He personally inspected the vehicle, including the oil dipstick. Fulmer claimed the oil appeared clear for a vehicle that had driven over 1,000 miles since its last reported oil change. But he did not notice any obvious leaks or oil contamination in the radiator. So he agreed to purchase the Forester.

On March 21, 2026, Fulmer bought the Forester from EZ Auto in Memphis. He put $2,500 down on the displayed $7,995 price. But at signing, Fulmer noticed the Retail Installment Contract listed a cash price of $8,490. EZ Auto represented that the $495 difference was the finance charge. Fulmer alleged that during signing, Samana deliberately concealed signing documents. He claimed Samana stacked the documents on top of each other and directed him to sign without providing time to read the contents.

Fulmer bought the Forester under the retail contract. Also under the retail contract, he purchased some allegedly optional vehicle coverage. The first "optional" coverage was a Vehicle

---

purpose of compelling arbitration.'" (quoting *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016))). Therefore, EZ Auto's Motion to Dismiss [23] is **DISMISSED without prejudice**.

Service Contract for $2,674. The second is Guaranteed Asset/Auto Protection (GAP) coverage for $862. Fulmer alleged Samana falsely represented that the lender required both the service contract and GAP coverage. According to Fulmer, he would not have signed the service contract or GAP coverage had he known they were optional. In total, Fulmer claimed these and other fraudulent add-ons increased the financed amount from $5,495 to $11,535.21.

EZ Auto then assigned its "right, title and interest in and to this [Retail Installment] Contract, and in and to the [Forester], to CREDIT ACCEPTANCE CORPORATION[.]" Two of the retail contract's six pages contain the dispute resolution agreement, including arbitration provisions. This section identifies "You" and "Your" as Fulmer. And it identifies "We" and "Us" as "[EZ Auto] and any assignee of the Contract . . . (including Credit Acceptance Corporation)." Both dispute resolution pages bear Fulmer's electronic initials.

Twenty-seven days after Fulmer finalized the purchase, the Forester suffered severe mechanical failure. He investigated and found "oily globs" in the coolant system. So he took the vehicle to Jim Keras Subaru which suspected a blown head gasket. Fulmer believed such a failure would not have developed in the short time he owned the Forester. And he insists EZ Auto concealed underlying mechanical issues.

Based on the alleged concealment, financing misrepresentations, and a purportedly improper vehicle registration, Fulmer sued EZ Auto and Credit Acceptance. He asserted claims against EZ Auto for fraudulent misrepresentation, breach of implied warranty of merchantability, unjust enrichment, and violations of the Truth in Lending Act, Tennessee Consumer Protection Act, and Magnuson-Moss Warranty Act. And he brought claims against Credit Acceptance for violation of the Truth in Lending Act and FTC Holder Rule Liability. Credit Acceptance then

moved to compel arbitration. EZ Auto responded supporting the motion. And it requested the Court also compel arbitration of Fulmer's claims against EZ Auto.

**Discussion**

This Court employs two analytical steps to decide whether to enforce an arbitration agreement. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). First, the Court applies state contract law to determine if the parties entered into an agreement to arbitrate. *Matter of Willis*, 944 F.3d 577, 579 (5th Cir. 2019) (citing *Kubala*, 830 F.3d at 201). Second, the Court determines if a particular claim is covered by the arbitration agreement. *Id.* But where an arbitration agreement delegates the arbitrability of claims to the arbitrator, the second step only requires the Court decide the delegation clause's validity. *Id.*

**I. Fulmer agreed to arbitrate his claims against EZ Auto and Credit Acceptance.**

Under the first analytical step, the Court must apply state contract law. Here, Tennessee's rather than Mississippi's contract law applies. That's because the retail contract has a governing law provision that says the retail contract is "governed by the law of the state of the Seller's address[.]" And the seller, identified as EZ Auto, has its address in Memphis, Tennessee.

The governing law provision also satisfies Mississippi's three-part choice-of-law test. This test requires the Court to "(1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws." *Lagrone Const., LLC v. Landmark, LLC*, 40 F. Supp. 3d 769, 777 (N.D. Miss. 2014) (internal quotation marks omitted) (quoting *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225-26 (5th Cir. 2010)). This case involves substantive contract law. And applying the Restatement (Second) of Conflict of Laws, "when a contract contains a choice of law provision, the law of the state chosen by the parties to govern their

contractual rights and duties will be applied[.]" *Id.* (applying the Restatement under Mississippi's choice of law test to determine Tennessee contract law governed where Tennessee had a substantial relationship with a signatory and Tennessee law would not violate a fundamental Mississippi policy). So the Court looks to Tennessee contract law.

"In Tennessee, a contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" *Gilliam v. Prince Health Grp. LLC*, No. 1:24-cv-00033, 2025 WL 1126545, at *3 (M.D. Tenn. Apr. 16, 2025) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)).

Fulmer challenges his assent to the contract. But in Tennessee, a signature to a written agreement "show[s] the signor's intent to be bound by the terms stated[.]" *Haren Const. Co., Inc. v. Ford*, 699 S.W.3d 902, 911 (Tenn. Ct. App. 2024). And if the law "requires a signature, an electronic signature satisfies the law." *Waddle v. Elrod*, 367 S.W.3d 217, 228 (Tenn. 2012) (quoting Tenn. Code Ann. § 47-10-107(d)). The Retail Installment Contract contains Fulmer's electronic signature. And every Additional Terms page—including the arbitration provision—shows Fulmer's electronic initials. So Fulmer assented to the retail contract's terms *and the arbitration provision*.

Further, the contract was based on sufficient consideration. It lacks any evidence of fraud or undue influence. There is no indication a standard retail contract goes against public policy. And the retail contract's terms are definite. Therefore, Fulmer entered a binding contract with EZ Auto under Tennessee law. And he agreed to arbitrate his claims as clearly stated on the arbitration page bearing his electronic initials. This initialed arbitration provision also covers Credit Acceptance because EZ Auto "assigned [the retail contract] to Credit Acceptance[.]"

Fulmer sees the initialed arbitration provision differently. He challenges the electronic signature and initials because they were "pre-loaded" rather than "knowing." And Fulmer argues that he could not assent to the retail contract as a whole. The reason why is because the salesman supposedly concealed some of the document's terms by covering them with other papers. These allegations form part of his claim for fraudulent inducement. But these arguments are unpersuasive when considering whether he agreed to arbitrate under Tennessee law.

First, Fulmer physically signed a declaration acknowledging the electronic signature process. Just above Fulmer's signature, he acknowledged he "was in physical control of the keyboard, mouse or other device to click a button, signature box, *or initial box* that applied my e-signature to the documents[.]" (emphasis added). The declaration also states that the e-signature represents Fulmer's "intent to sign the documents as if I provided my handwritten signature on the documents." Like the retail contract, this declaration satisfies Tennessee contract law. Therefore, the electronic initials on the retail contract are valid.

Second, Fulmer's pitch that he was fraudulently induced to sign the contract is a question for the arbitrator—not this Court. That's because Fulmer aims his fraud claim against the retail contract generally—not the arbitration provision itself.

"[I]f the claim is fraud in the inducement of the *arbitration clause itself*—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the [Federal Arbitration Act] does not permit the federal court to consider claims of fraud in the inducement of the *contract generally*." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (emphasis added); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator").

Fulmer cites *Credit Acceptance Corp. v. Ledbetter* suggesting that because he disputes his assent to the contract, this Court should determine whether EZ Auto fraudulently induced him to sign. No. 1:16-cv-70-DAS, 2016 WL 4688867 (N.D. Miss. Sept. 7, 2016). But *Ledbetter* dealt with an allegedly forged signature on the declaration acknowledging electronic signature. *Id.* at *3. There, the Court denied arbitration and scheduled a hearing on the forged signature. *Id.* at *4. But when Ledbetter admitted the signature was genuine, the Court compelled arbitration. *Id.* [Doc. 29].

Fulmer does not contend someone forged his signature. His argument against compelling arbitration is different. It relies on his assertion EZ Auto concealed contract terms. That is the same allegation underlying his fraudulent inducement claim. Fulmer focuses on fraudulent inducement of *the whole retail contract*. He does not single out the arbitration provision. Because his claim is for fraudulent inducement of the contract generally, the arbitrator must decide the contract's validity. *See Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218-19 (5th Cir. 2003) ("Even if the arbitrator concludes that the agreement was void, and the parties are returned to their pre-agreement positions *as if* the agreement never existed, the agreement existed long enough to give the arbitrator the power to decide the dispute.").

The Retail Installment Contract, including the arbitration provision, bears Fulmer's binding, electronic signature. And this agreement satisfies Tennessee's contract law. None of Fulmer's arguments about e-signatures or fraud defeat this determination.[3] So under the first step

---

[3] Fulmer also argues that a Mississippi-specific warranty addendum deletes the arbitration provision entirely. But that addendum is not part of the Retail Installment Contract. Instead, the Vehicle Service Contract contains this state-specific addendum. So this argument has no effect on whether Fulmer must arbitrate his claims under the Retail Installment Contract.

of the arbitration analysis, Fulmer agreed to arbitrate his claims against EZ Auto and Credit Acceptance.

## II. The arbitrator must decide gateway arbitrability issues.

Having found an arbitration agreement exists between Fulmer, EZ Auto, and Credit Acceptance, typically the Court would next determine if the arbitration agreement covers any of Fulmer's claims. But this arbitration contract delegates the arbitrability of claims to the arbitrator. So the Court need only ask if the delegation clause is valid. *Matter of Willis*, 944 F.3d at 597.

To determine a delegation clause's validity, the Court considers whether the delegation clause "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 673, 68-69 (2010)). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* This approach reflects the federal policy in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995).

The Retail Installment Contract incorporates the American Arbitration Association's (AAA) rules. Under AAA's Rule 7, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim[.]" And "express incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 746 (5th Cir. 2018) (quoting *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262-63 (5th Cir. 2014)). The incorporation of AAA's rules into the arbitration agreement—which Fulmer initialed—clearly and unmistakably shows Fulmer agreed to arbitrate arbitrability. So the delegation clause is valid.

### III. Fulmer's other arguments lack merit.

Fulmer raises a few other tangential arguments for why the Court should deny arbitration. But none of them affect the arbitration analysis. In short, the Retail Installment Contract meets the requirements of a valid contract under Tennessee law. And that contract's arbitration provision contains a valid delegation provision. Thus, the arbitrator must decide gateway arbitrability issues—not this Court.

## Conclusion

Credit Acceptance's Motion to Compel Arbitration [28] is **GRANTED**. Fulmer must submit all claims against both Credit Acceptance and EZ Auto to arbitration under the terms of the Retail Installment Contract. The parties shall update the Court as to the arbitration's status every sixty (60) days, starting sixty (60) days after entry of this Order. And the parties shall also notify the Court about the outcome of the arbitration within ten (10) days thereafter.

EZ Auto's Motion to Dismiss [23] is **DISMISSED without prejudice**.

The case against Credit Acceptance and EZ Auto is **STAYED** until further order of the Court. This order does not stay the case against the remaining defendant, First Auto.

**SO ORDERED**, this the 4th day of November, 2026.

/s/ James D. Maxwell, II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI